CITY OF DALLAS et al. v. ARMOUR & CO. et al.   (No. 8283.)

(Court of Civil Appeals of Texas. Dallas. Oct. 25, 1919.)

1. EQUITY ⟠97—JURISDICTION OF "CLASS SUITS."

Class suits may be maintained in equity; class suits being those in which one or more in a numerous class, having a common interest in the subject-matter, sue in behalf of themselves and all others of the class.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Class Suit.]

2. EQUITY ⟠97—PARTIES IN CLASS SUITS.

Persons named in the record in a class suit are parties; but others of the class, although persons interested, are not parties.

3. JUDGMENT ⟠702—RES JUDICATA; PARTIES NOT NAMED IN CLASS SUITS.

Where an action is brought by a particular class of persons, as citizens and taxpayers, all members of such class are bound by the judgment rendered, although not named in the record as parties.

4. JUDGES ⟠44—DISQUALIFICATION; "PARTY" TO SUIT.

A judge, who is a resident of a city and a taxpayer, although interested in a suit brought by certain persons in behalf of the taxpayers of the city as a class is not a "party" to the suit, so as to be disqualified to hear it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Party.]

5. JUDGES ⟠44 — DISQUALIFICATION; "INTERESTED" IN SUIT.

Judges, who are taxpayers of a city, although interested in a suit brought in behalf of the taxpayers of such city as a class to enjoin a purposed expenditure of the public funds and donation of land, they are not so immediately and directly "interested" as to be disqualified to try and hear the suit, under Const. art. 5, § 11, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1584.

[Ed. Note.—For other definitions, see Words and Phrases, Interested.]

6. INJUNCTION ⟠110—AUTHORITY OF NONRESIDENT JUDGE.

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 4643, an injunction issued by a nonresident district judge was void, where it was erroneously thought that the resident judges were disqualified by interest.

Appeal from District Court, Dallas County.

Action by Armour & Co. and others against the City of Dallas and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

⟠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Jas. J. Collins, Edward Dougherty, T. B. McCormick, and Thompson, Knight, Baker & Harris, all of Dallas, for appellants.

Etheridge, McCormick & Bromborg, of Dallas, for appellees.

RASBURY, J. Upon the petition of Armour & Co. of New Jersey, Armour & Co. of Texas, a foreign and domestic corporation, respectively, and F. M. Etheridge and J. M. McCormick, of Dallas, Tex., having for its purpose the cancellation of a contract between the city of Dallas, the Texas & Pacific Railway Company, and the Wholesale District Trackage Company, on the ground that it was void, because illegal, and for temporary injunction restraining all parties thereto from performing said contract or any portion thereof pendente lite, and alleging that the petitioners were taxpayers of the city of Dallas, and sued for themselves and all other taxpayers in said city of Dallas, Hon. Horton B. Porter, judge of the Sixty-Sixth district court in Hill county, upon the sworn allegation that the proceeding was a class suit, by fiat indorsed upon the petition in Hillsboro, directed the clerk of the district court of Dallas county to file the petition and docket the cause in the Fourteenth district court in Dallas county, and upon the petitioners entering into a bond in the sum of $10,000, conditioned as required by law, to forthwith issue the temporary injunction. Bond was filed and the writ issued. The city, the railway company, and the trackage company, without further proceedings in the court below, appealed from the order of the district judge in the time and manner prescribed by law.

Omitting formalities, the petition alleged that appellants entered into a contract in writing (certain details and provisions of which we omit, for the reason that they are not of importance to the issues presented), which, after reciting that the railway company operates double railway tracks upon Pacific avenue in the city of Dallas, under grant from said city for a period of 50 years from April, 1890, and that located on said street, between Griffin and Preston streets, are various industrial plants served by the tracks of the railway company, and that the city and the trackage company desire same removed between the points indicated, and that the railway company is willing to remove same, the parties agree (1) that the trackage company will procure and convey to a trustee for the railway company certain designated lands to be used by the railway company as an industrial district for the various uses required for that purpose, conveyance to the railway company to be made when it shall have removed its tracks from Pacific avenue as indicated, and convey to the city of Dallas by special warranty deed, in consideration of $100,000, certain lands which it proposes to acquire from the railway company; (2) that the railway company will arrange with the Houston & Texas Central Railroad Company to use the latter's tracks for entry into the city, abandon, with certain exceptions, its tracks upon Pacific avenue between the points indicated, abandon, after being put in peaceful possession of the lands agreed to be conveyed by the trackage company, all property on Pacific avenue, between Griffin and Lamar streets, other than that abandoned to it by the city, conveying to the trackage company by special warranty deed such thereof as it has title to, and, after the grant by the city of the rights above enumerated, and being vested with title in the lands by the trackage company, it will commence the construction of the tracks, etc., for the industrial district indicated, and complete same with due diligence; (3) that the city will by ordinance grant the railway company the use of the lands to be conveyed to it by the trackage company for the purposes indicated, as well as the right to operate its trains, etc., over a certain line of railway proposed to be constructed by the Houston & Texas Central Railroad Company in said city, to abandon by ordinance to the railway company a portion of the north side of Pacific avenue, between Griffin and Lamar streets, and to purchase from the trackage company, for $100,000, the land of the railway company lying contiguous to that abandoned to the railway company by the city, for the purpose of opening and extending Pacific avenue, between Griffin and Lamar streets.

As grounds for canceling said contract appellees allege, among other matters, that the proposed purchase by the city from trackage company of the property to be abandoned to it by the railway company is but a pretense, and is intended in fact as a gift or donation for making up a shortage for the trackage company in its purchase of the industrial district, and forbidden by the Constitution of the state, in addition to which said property is incumbered by sundry liens, aggregating more than $25,000,000, and further, if said agreement to pay $100,000 is not a gift or donation, it is yet in violation of the Constitution and the city's charter, in that the city did not, before entering into such agreement, appropriate said sum of money, and that the agreement by the city to abandon to the railway company 40 feet off the north side of Pacific avenue, between Griffin and Lamar streets, is likewise a gift or donation and forbidden by the Constitution, and further that said portion of the contract that obligates the city to enact in the future certain ordinances is against public policy, and consequently void, because it pledges and hypothecates the city's legislative power, and, if not against public policy, is illegal, because

it does not exact any compensation for the grant, as is required by the city's charter.

In limine appellees suggest that, it appearing from the petition that the members of this court are taxpayers of the city of Dallas and that the suit is appropriately brought in our behalf as members of that class, we are disqualified to hear and determine the issues in the case, both because we are parties plaintiff and interested in the cause and the question to be determined.

[1, 2] We apprehend that it is unnecessary at this time to cite authority in support of the right in equity to maintain class suits; that is, suits in which one or more of a numerous class, having a common interest in the subject-matter, sue in behalf of themselves and all others of the class. 30 Cyc. 132. So, assuming and conceding, as we must, in view of the pleading, that the case presents a class suit, are the members of this court parties thereto in the sense that plaintiffs and defendants ordinarily are? In determining whether an attorney, who had a contingent fee in the cause of action, was a party to the suit, and the presiding judge disqualified because related to the attorney within the prescribed degree of consanguinity, our Supreme Court held that the terms "party" and "parties," when used in connection with suits or actions, were technical words and to be given that signification. Winston v. Masterson, 87 Tex. 200, 27 S. W. 768. The court in the case cited adopts the holding of another that a "party" is the one by or against whom a suit is brought, the parties named in the writ on the record; all others who may be affected indirectly or consequentially being persons interested, but not parties. Such, in our opinion, is the status of all members of the given class in class suits, who have not intervened or in some authorized manner been made parties on the record.

[3, 4] The fact that those in the particular class are bound by the judgment rendered therein as they are (Hovey v. Shepherd, 105 Tex. 237, 147 S. W. 224) is of no importance. The attorney in Winston's Case was held not to be a party to the suit, yet it is obvious that an adverse judgment against his client would preclude a suit by him for his interest in the cause of action in the same manner that any judgment rendered in the present case will affect all those "indirectly or consequentially" interested therein. We therefore conclude that we are not "parties" to the suit, and hence not disqualified for that reason.

[5] Coming, then, to the next contention, are we disqualified because the case is one wherein we are "interested" (Const. art. 5, § 11), or one wherein we are interested "in the question to be determined" (article 1584, Vernon's Sayles' Civ. Stats.)? (We note, in passing, without expressing any view on the issues that might arise thereon, the fact that the Legislature has by article 1584 attempted to broaden the disqualifying provisions of the Constitution). "The interest which will disqualify a judge must be direct and immediate, and not contingent and remote." "Where a judicial officer has not so direct an interest in the cause or matter as that the result must necessarily affect him, to his personal or pecuniary loss or gain, * * * then he may sit." The quotations are the rule announced in other jurisdictions, and adopted by our Supreme Court, as the test to be applied to the constitutional inhibition. City of Oak Cliff v. State ex rel. Gill, 97 Tex. 391, 79 S. W. 1069. The purpose of the suit in the case cited was to declare void an act of the Legislature annexing Oak Cliff to the city of Dallas. The act authorized the city of Dallas, upon its taking effect, to issue $50,000 of bonds and to levy a tax sufficient to provide a sinking fund and interest therefor. Judge Gaines, then a member of the Supreme Court, was a taxpayer in the city of Dallas, and when the case reached the Supreme Court the suggestion was made that Judge Gaines was disqualified to sit in the case, for the reason that he was interested therein. The court declared, for the reasons stated in the opinion, that Judge Gaines was neither directly nor immediately interested as a taxpayer in the suit, and hence not disqualified.

In the present case our interest, it occurs to us, is less direct and immediate, or, otherwise stated, more remote and contingent, than the interest of Judge Gaines. The substance of the acts of the city officials challenged in the present case is an attempt, under the guise of a purchase, to donate $100,000 of public funds to a private corporation, to enable it to carry out its contract to furnish the railway company certain lands for an industrial railway center, charged to be in violation of the Constitution, the donation of a portion of a public street to the railway company, likewise in violation of the Constitution, the pledging of its legislative authority in advance, etc. Such acts, if true, upon which we may and do not pass pro or con, present questions in which the members of this court as citizens are interested. Such interest does not, however, disqualify us from passing upon their legality. 15 R. C. L. 536. The interest to disqualify must be legal or beneficial, or, as said in the case cited, personal or pecuniary. Eliminating those acts which tend to show misconduct on the part of the city officials, there remains only the proposed expenditure of the public funds, in which we might be said to be personally and pecuniarily interested. If we are interested, then is the interest so remote and contingent as not to affect our qualifications under the rule stated? We conclude it is. While it may be conceded that the ex-

penditure of the $100,000 might tend to increase the tax rate, though such possibility is obviously remote, yet any judgment rendered in this case will neither free any property we possess from any threatened tax or impose another tax thereon. It will give the city no right to levy a tax, nor the members of this court any relief against any tax hereafter to be levied. As a consequence, we are neither directly nor immediately interested in the matters that may be adjudged in the proceeding, and hence not disqualified to hear and determine the issues.

[6] Having determined that we are qualified to hear the proceeding, it follows that the district judges of Dallas county were qualified, since the same inhibitions apply to district judges that apply to members of this court, and, being so qualified, it further follows, as contended by appellants, that Hon. Horton B. Porter, the nonresident judge who issued the writ, was without authority to do so, since he acted and assumed to act only on the basis that the Dallas county judges were disqualified, and, being without authority, his act is void. Article 4643, Vernon's Sayles' Civ. Stats.

The interlocutory writ of injunction is dissolved, and the case is remanded to the district court, for further proceedings in consonance with the views herein expressed.

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes