UNION PACIFIC RESOURCES COM-
PANY and Tetra Applied Tech-
nologies, Inc., Appellants,

v.

Loretta CHILEK; Phoenix Horizontal,
Inc.; and Great West Energy and
Exploration, Inc., Appellees.

No. 03–97–00392–CV.

Court of Appeals of Texas,
Austin.

March 26, 1998.

William Ma. Carver, Crady, Jewett, McCaulley, L.L.P., Houston, Shayne D. Moses, Cantey & Hanger, L.L.P., Fort Worth, for Appellant.

Olan John Boudreaux, Fisher Gallagher Lewis, L.L.P., Houston, for Appellee.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

ABOUSSIE, Justice.

In this interlocutory appeal, appellants, Union Pacific Resources Company and Tetra Applied Technologies, Inc., complain of the trial court's order certifying appellees' suit as a class action.[1] *See* Tex.R. Civ. P. 42. Finding no abuse of discretion, we will affirm.

## STATEMENT OF FACTS

In December 1994, appellants unsuccessfully attempted to plug the Nana Newton Well No. 1 ("Nana Newton Well"), located in Lee County, Texas. Appellants did not successfully plug the Nana Newton Well until the summer of 1995. The basis for the underlying suit is appellees' claim that the improper plugging caused large quantities of water from the Wilcox formation to flow into the Austin Chalk formation, thereby ruining or damaging numerous wells which had been producing oil, gas, and liquids. Appellees further claim that Wilcox formation water continued to flood the Austin Chalk formation, adversely affecting numerous other wells and causing irreparable damage to mineral interest owners, until the summer of 1995.

Appellees filed suit on behalf of all revenue interest owners in the eleven wells affected by the improper plugging, seeking to recover damages on theories of negligence per se, negligence, gross negligence, trespass, and nuisance. On April 2, 1997, appellees filed a motion for class certification, and, after a hearing on the motion, the trial court granted class certification. In its order, the trial court named as class representatives Loretta Chilek, Phoenix Horizontal, Inc., and Great West Energy and Exploration, Inc.,[2] and certified the following class of plaintiffs:

> ... all revenue interest owners, excluding Defendants and their legal representatives, assigns and successors, in the following wells located in Lee County, Texas:
>
> a. Union Pacific Resources Company Dockery No. 1 Well
>
> b. Union Pacific Resources Company Weiman No. 1 Well
>
> c. Union Pacific Resources Company Lenoise No. 1 Well

1. Appellees are Loretta Chilek, Phoenix Horizontal, Inc., and Great West Energy and Exploration, Inc. For simplicity, they will be referred to as "appellees" when mentioned collectively.

2. Chilek owns the entire royalty interest in the Phoenix Horizontal, Inc. Loretta Chilek Well No. 1 and a portion of the royalty interest in the Great West Energy and Exploration, Inc. State of Texas No. 2 Well. Phoenix Horizontal, Inc. owns the entire working interest in the Phoenix Horizontal, Inc. Loretta Chilek Well No. 1, and an overriding royalty interest in the Great West Energy and Exploration, Inc. State of Texas No. 2 Well. Great West Energy and Exploration, Inc. is the operator of and working interest owner in the Koehler No. 2 Well, the Durrenberger Unit No. 1 Well (a/k/a the State of Texas No. 1 Well) and the State of Texas No. 2 Well.

d. Union Pacific Resources Company Sliva No. 1 Well

e. Union Pacific Resources Company Elise No. 1 Well

f. Phoenix Horizontal, Inc. Loretta Chilek No. 1 Well

g. U.S. Operating, Inc. No. 2 Schkade Unit Well

h. Great West Energy & Exploration Durrenberger Unit No. 1 Well (a/k/a the State of Texas No. 1 Well)

i. Great West Energy & Exploration State of Texas No. 2 Well

j. Great West Energy & Exploration Koehler No. 2 Well

k. Parkway Petroleum, Inc. No. 1 Lanetta Well

On appeal, appellants assert by one point of error the trial court erred in certifying the class.

## STANDARD OF REVIEW

■ A trial court has broad discretion in determining whether to grant or deny class certification. *Forsyth v. Lake LBJ Inv. Corp.*, 903 S.W.2d 146, 149 (Tex.App.—Austin 1995, writ dism'd w.o.j.). The trial court may base its decision on pleadings or other material in the record. *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 647 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.). In reviewing a class certification order, the appellate court is "required to view the evidence in the light most favorable to the trial court's action, and indulge in every presumption which would favor the trial court's action." *Angeles/Quinoco Sec. Corp. v. Collison*, 841 S.W.2d 511, 513 (Tex.App.—Houston [14th Dist.] 1992, no writ). The reviewing court should reverse the certification order only if the record shows a clear abuse of discretion. *St. Louis Southwestern Ry. v. Voluntary Purchasing Groups, Inc.*, 929 S.W.2d 25, 29 (Tex.App.—Texarkana 1996, no writ). A trial court abuses its discretion by acting arbitrarily, unreasonably, or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). A clear failure by a trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

## DISCUSSION

■ At the initial certification stage, the trial court is not required to try the merits of the cause of action, and the class proponents are not required to prove a prima facie case in order to be certified. *See Weatherly*, 905 S.W.2d at 647; *St. Louis Southwestern Ry.*, 929 S.W.2d at 30. The class proponents bear the burden of proving to the trial court that a class action can be maintained under Rule 42 of the Texas Rules of Civil Procedure. *See St. Louis Southwestern Ry.*, 929 S.W.2d at 30; *Clements v. League of United Latin American Citizens (LULAC)*, 800 S.W.2d 948, 952 (Tex.App.—Corpus Christi 1990, no writ). To obtain certification, a party must satisfy the four requirements of Rule 42(a) as well as one of the requirements of Rule 42(b). *See* Tex.R. Civ. P. 42(a), (b); *Vinson v. Texas Commerce Bank–Houston, Nat'l Ass'n*, 880 S.W.2d 820, 824 (Tex.App.—Dallas 1994, no writ).

Under Rule 42(a), class proponents must show that (1) the number of plaintiffs is so numerous that joinder of all class members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the proposed representatives are typical of those of the class; and (4) the proposed representatives will fairly and adequately protect the interests of the class. Tex.R. Civ. P. 42(a). In other words, plaintiffs must prove numerosity, commonality, typicality, and adequate representation. *See Forsyth*, 903 S.W.2d at 149–50. Once plaintiffs have established these elements, they also must satisfy one of the subsections of Rule 42(b). As certified in this case, the issues common to the class must predominate over individual issues, and the class action must be the superior vehicle for handling the suit. Tex.R. Civ. P. 42(b)(4).

### Numerosity

■ The first prerequisite to class certification is numerosity. Numerosity is not based on numbers alone. *Weatherly*, 905 S.W.2d at 653. A practical judgment on the particular facts of the case must be made,

and no hard and fast number rule can, or should, be stated. *Chevron U.S.A., Inc. v. Kennedy*, 808 S.W.2d 159, 161 (Tex.App.—El Paso 1991, writ dism'd w.o.j.). The test for numerosity includes an analysis of such factors as judicial economy, the nature of the action, geographical locations of class members, the likelihood that class members would be unable to prosecute individual lawsuits, and whether joinder of all members is practicable in view of the size of the class. *See Weatherly*, 905 S.W.2d at 653. Impracticable does not mean impossible. *Chevron*, 808 S.W.2d at 161. Class proponents need only to show that it is extremely difficult or inconvenient to join all the members of the class as parties. *Id.*

■ At the class certification hearing, appellees introduced evidence that class membership in just three of the eleven wells exceeds two hundred and that the class members are dispersed throughout Texas and the United States as well as the Principality of Liechtenstein. Reversing a trial court's denial of certification, the appellate court in *Weatherly* stated "[c]learly, joinder of some two hundred parties dispersed throughout the United States, Bermuda, and Canada is impracticable." *Weatherly*, 905 S.W.2d at 654. Considering the size of the class plus the geographical dispersal of members in this case, the trial court could have found that joinder was impracticable and judicial economy and practicality were best served by certifying the class.

## Typicality

■ The typicality element requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Tex.R. Civ. P. 42(a)(3). Essentially, typicality requires that class representatives possess the same interests and suffer the same injury as the unnamed or absent class members. *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 372 (Tex.App.—El Paso 1993, no writit). To be typical, class representatives' claims must arise from the same event or course of conduct giving rise to the claims of other class members and must also be based on the same legal theories. *Weatherly*, 905 S.W.2d at 653.

■ Appellants argue that typicality does not exist here because some class members have not suffered any loss while others may have suffered loss in varying degrees. We are not persuaded by appellants' argument. The class representatives have alleged that appellants' improper plugging of the Nana Newton Well caused damage to their wells; accordingly, the class members must have similar claims to be in the class and recover for the alleged wrongful conduct. The fact that any recovery due the members will vary according to the extent of damage or the type and amount of interest in a well does not defeat typicality. *See Ford Motor Co. v. Sheldon*, 965 S.W.2d 65, 71–72 (Tex.App.—Austin 1998, no pet. h.) (typicality requirement satisfied when evidence shows claims of class representative have same essential characteristics as those of class as whole); *Cedar Crest Funeral Home, Inc. v. Lashley*, 889 S.W.2d 325, 331 (Tex.App.—Dallas 1993, no writ) (claims need not be identical or perfectly coextensive, just substantially similar). Because all of the claims of the class representatives and members stem from appellants' conduct in plugging the Nana Newton Well, are based on the same legal theories, and seek to recover monetary damages, the trial court could have concluded typicality exists.

## Adequate Representation

■ Adequate representation consists of two elements: (1) it must appear that the representative parties, through their attorneys, will vigorously prosecute the class claims and (2) there must be an absence of conflict or antagonism between the interests of the named plaintiffs and those of other members of the proposed class. *See Glassell v. Ellis*, 956 S.W.2d 676, 682 (Tex.App.—Texarkana 1997, pet. requested); *Health & Tennis Corp. of America v. Jackson*, 928 S.W.2d 583, 589 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.); *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 614 (Tex.App.—Texarkana 1995, writ dism'd). Appellants attack both aspects of this prong of Rule 42(a). Advancing a lack of standing argument, appellants contend the class representatives cannot adequately represent the

claims for seven of the eleven wells because they have no financial interest in those seven wells. Appellants also claim the method by which Great West operated three wells creates a conflict of interest and prevents Great West from serving as a class representative. Specifically, appellants claim whether Great West's negligence resulted in a loss of production is a point of contention. We reject appellants' positions.

It is true that a plaintiff cannot represent others with causes of action against defendants against whom the plaintiff has no cause of action. *Lashley*, 889 S.W.2d at 331. This, however, is not the situation before us. Here, the class representatives have alleged that they, as well as the class members, have numerous causes of action and have suffered injury at the hands of appellants; they do not seek to recover damages from defendants against whom they have no cause of action. With respect to appellants' second argument, any antagonism between Great West and the class members is hypothetical and disregarding it does not constitute an abuse of discretion. *See Employers Casualty Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self–Insurance Fund*, 886 S.W.2d 470, 476 (Tex.App.—Austin 1994, writ dism'd w.o.j.) (speculative claims concerning potential conflicts are insufficient to show district court abused discretion in finding representativeness). There is no evidence in the appellate record that any class members actually oppose Great West as a class representative. There is evidence, however, of Great West's intent to pursue the lawsuit aggressively because of its duty to protect the interest of investors and landowners. *See Amchem Prods., Inc. v. Windsor*, —— U.S. ——, ——–——, 117 S.Ct. 2231, 2251–52, 138 L.Ed.2d 689, 715 (1997) (named plaintiff should provide reviewing court with assurance that class representative properly understands representational responsibilities). If it later becomes apparent that a conflict exists and Great West can no longer fulfill its duties as a class representative, the trial court has authority to alter, amend, or withdraw the class determination or order the naming of additional parties in order to insure the adequacy of representation. *See* Tex.R. Civ. P 42(c)(1).

Moreover, the trial court can designate subclasses under Rule 42(d) to assure adequate representation to a particular group with a particular problem. *Chevron*, 808 S.W.2d at 163. Under these facts, the trial court did not abuse it discretion in concluding the class representatives can adequately represent all the class members.

## Commonality

The commonality threshold is not high. *Ford*, at 69. A trial court must determine that "there are questions of law or fact common to the class." Tex.R. Civ. P. 42(a)(2). Questions common to the class are those questions which, when answered as to one class member, are answered as to all class members. *RSR Corp. v. Hayes*, 673 S.W.2d 928, 930 (Tex.App.—Dallas 1984, writ dism'd). In this case, the overriding questions to be answered are whether appellants improperly plugged the Nana Newton Well and, if so, whether that conduct caused water to flow into the Austin Chalk formation adversely affecting other wells. This is the gravamen of appellees' suit, and their entire case will stand or fall on the answers. Granted, some individual inquiries might be necessary; however, the rule does not require that all or even most of the questions be common; it is sufficient that there are some questions of law or fact common to the class members. *See Employers Casualty*, 886 S.W.2d at 474; *Wente v. Georgia–Pacific Corp.*, 712 S.W.2d 253, 255 (Tex.App.—Austin 1986, no writ). The common questions are sufficient to justify the certification of a class.

## Predominance of Common Issues

Appellants argue that common issues do not predominate over individual issues. Appellants take the position that the trial court will be forced to determine whether each well has suffered a loss of production since the plugging of the Nana Newton Well, the cause of the loss of production, and exactly what type of production was lost. However, the test for predominance is not whether common issues outnumber individual issues, but whether common issues will be the object

of most of the efforts of the litigants and the court. *See Ford*, at 72; *Glassell*, 956 S.W.2d at 686; *Employers Casualty*, 886 S.W.2d at 476. Appellants' conduct in plugging the Nana Newton Well certainly will be the focus of the court and parties because, if the fact finder decides that appellants did not improperly plug the Nana Newton Well or cause the Austin Chalk formation to flood, the trial would end without reaching any individual issues. Even assuming it is not conclusive at this early stage that common issues predominate, certification of the class remains the most efficient approach. *See Dresser*, 847 S.W.2d at 375; *Life Ins. Co. of Southwest v. Brister*, 722 S.W.2d 764, 775 (Tex.App.—Fort Worth 1986, no writ). If, after the case has developed more fully, it becomes apparent that common questions will not predominate at trial, the trial court can dissolve the class or certify subclasses. *Dresser*, 847 S.W.2d at 375. At this stage in the litigation, the trial court could have concluded that the resolution of common issues predominates over individual issues.

**Superiority of Class Action**

 A class action is superior to other methods of adjudication where any difficulties which might arise in the management of the class are outweighed by the benefits of classwide resolution of common issues. *See Weatherly*, 905 S.W.2d at 654. In assessing the superiority of a class action, the court may consider: (1) class members' interest in resolving the common issues by class action; (2) the benefit from discovery already commenced; and (3) the trial court's time and effort invested in familiarizing itself with the dispute. *See* Tex.R. Civ. P. 42(b)(4); *Weatherly*, 905 S.W.2d at 654.

 Appellants argue that general discovery will not benefit all class members, class certification is not the most efficient use of judicial resources, and adjudication of the class representatives' claims will in no way benefit or affect the specific property rights of other unnamed class plaintiffs. We disagree. Since appellees' case revolves around the plugging of the Nana Newton Well, discovery regarding appellants' plugging of the well certainly will benefit all class members.

Moreover, repeated litigation over appellants' plugging of the Nana Newton Well would be judicially inefficient and wasteful. Finally, whether the well was properly plugged potentially affects the property rights of all class members. Consequently, the trial court could have concluded a class action was the superior method for handling the claims.

**CONCLUSION**

 A trial court should favor maintenance of a class action when, as here, class certification is requested at an early stage in the litigation before full discovery has occurred. *See Jackson*, 928 S.W.2d at 587; *Reserve Life Ins. Co. v. Kirkland*, 917 S.W.2d 836, 842 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Clements*, 800 S.W.2d at 952. This is especially true in light of the authority of the trial court to amend or withdraw class determination at a later date. *Weatherly*, 905 S.W.2d at 647. Viewing the appellate record from this perspective, we cannot say that the trial court abused its discretion in certifying the suit as a class action. Since appellants have failed to demonstrate the trial court abused its discretion by certifying the class, we overrule appellants' sole point of error and affirm the order of the trial court.